UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| ERICK SANDERS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 3:25-cv-03010-MMM |
| | ) | |
| ZORIAN TRUSEWYCH, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MERIT REVIEW ORDER**

Plaintiff proceeds pro se from his incarceration in Western Illinois Correctional Center and pursues claims of cruel and unusual punishment in violation of the Eighth Amendment.

A. Merit Review

**Legal standard.** The case is before the Court for a merit review of Plaintiff's Complaint. The Court must "screen" Plaintiff's complaint and identify and dismiss any legally insufficient claim. 28 U.S.C. § 1915A. A claim is legally insufficient if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." *Id.*

The Court accepts the factual allegations as true, liberally construing them in the plaintiff's favor. *Turley v. Rednour*, 729 F.3d 645, 649 (7th Cir. 2013). Conclusory statements and labels are insufficient—the facts alleged must "state a claim for relief that is plausible on its face." *Alexander v. United States*, 721 F.3d 418, 422 (7th Cir. 2013) (citation omitted).

**Facts alleged.** Plaintiff names as Defendants Dr. Zorian Trusewych, Warden Brittany Greene, prison medical contractor Wexford Health Sources, Inc., Health Care Unit Administrator Kathy Ashcraft, IDOC Administrative Review Board member Jeremy Bonnett, and Interim Medical Director Shana Clarkson.

In August 2020, Plaintiff was seen by a non-defendant nurse regarding pain, swelling, and redness in his right eye. Plaintiff received acetaminophen, ointment, and the nurse advised Dr. Trusewych of the same. Four days later, on September 2, Trusewych saw Plaintiff, and documented irritation, swelling, an apparent corneal laceration, and a stye, of the right eye. Trusewych laid out no plan of further treatment beyond that effected by the nurse. Between August 28 and November 1, 2020, Plaintiff's eyes both became painfully infected.

Two years later, on November 1, 2022, Plaintiff went to the Health Care Unit due to a pea sized stye on his left upper eyelid, complaining of pain and slight vision impairment. He was seen by a nurse and provided a one-week supply of Tobramycin (an ointment used to treat bacterial eye infections such as styes). On December 29, upon further complaints of irritation, pain, and vision impairment, Dr. Trusewych saw Plaintiff, noted a stye on Plaintiff's right eye, observed that the condition was chronic, and prescribed washing with baby shampoo.

Between December 29, 2022, and January 18, 2023, non-defendant Nurse Practitioner Karen Howard saw Plaintiff and noted complaints of light sensitivity, dried crusting on lashes, and mild tearing of the right eye. On January 18 an unknown nurse issued Plaintiff an eye patch.

On January 28, 2023, Plaintiff was seen by an unknown nurse at sick call because he was frustrated, in great pain, and his ability to see was severely impaired. He asked for dark glasses for the light sensitivity and was told that he could not receive them, per Wexford's policy that only one medical issue – here eye swelling, rather than light sensitivity – could be addressed per visit.

On February 1, NP Howard noted Plaintiff's right eye was not improved, left eye had dried discharge from eye infection, and eye swelling. NP Howard recommended a referral for Plaintiff for a non-urgent outside ophthalmologist for a consult that same day. Dr. Trusewych agreed.

On February 8, 2023, Wexford authorized Dr. Trusewych's request for a consultation and bilateral eye treatment. Plaintiff was sent out for treatment April 7, 2023. Dr. Abram Geisendorfer at Quincey Medical Group ordered a treatment plan including necessary immediate surgery, which apparently occurred that same day, as well as a treatment plan for post-surgery.

Dr. Trusewych failed to comply with Dr. Geisendorfer's post-operative plan, which was to include certain antibiotics. Plaintiff repeatedly had to request sick call, and verbally complain, to receive follow-up care. Bumps on eyelids had returned, his eyes were swollen. Howard told Plaintiff that if he had received the post-operative care the infection likely would not have returned.

Healthcare Unit Administrator Ashcraft refused to respond to Plaintiff's grievances. It is a plausible inference as well that as Healthcare Unit Administrator, Ashcraft was responsible for timely scheduling of appointments.

On July 21, 2023, Plaintiff was again referred to Dr. Geisendorfer by NP Howard for a nonurgent consult.

On September 29, 2023, Plaintiff filed an emergency grievance directly to Warden Brittany Greene. Plaintiff was sent back out to see a specialist on October 10, 2023, and based on that action the grievance was deemed moot. Plaintiff then had another eye surgery on October 13. Plaintiff appealed the finding of mootness because he believed administrative staff should have interviewed him regarding his complaints that medical staff had failed to follow Dr. Geisendorfer's treatment plan. Defendant Jeremy Bonnett of the IDOC Administrative Review Board did not investigate Plaintiff's complaint or consider that if Plaintiff was still pursuing the issue then there was a possibility that the issue had not been fully addressed.

On November 2, 2023, Plaintiff's situation was deemed "urgent" when replacement/interim Western Illinois Medical Center Medical Director Shana Clarkson requested a referral to an oculoplastic surgeon for evaluation, on Dr. Geisendorfer's recommendation, if Plaintiff's situation had not improved. On November 9, Plaintiff reported no progress since the October 13 surgery. This is the end of Plaintiff's factual allegations.

**Analysis.** Plaintiff states an Eighth Amendment claim against Defendants Dr. Trusewych and Healthcare Unit Administrator Ashcraft for delays in treatment after his referral to see a specialist on February 8, 2023, through his October 13, 2023, surgery. Given his history of recurring eye issues, and the severity of the situation at the end of January, 2023, these ongoing further delays, failure to follow specialist recommendations,

and failure to ensure treatment, give rise to a plausible inference of deliberate indifference to a serious medical need. *See Petties v. Carter*, 836 F.3d 722, 729-30 (7th Cir. 2016) (en banc).

Plaintiff does not allege a plausible claim as to Greene, Wexford, Bonnett, and Clarkson.

As to Warden Greene and ARB member Bonnett, Plaintiff alleges he filed an emergency grievance on September 29, 2023, was sent out to a specialist by October 10, then had another surgery by October 13. He alleges the emergency grievance was found moot, and asserts that was wrong because more investigation should have been done as to why he was still pursuing the grievance. These allegations do not state a claim – within days of the emergency grievance, Plaintiff was sent for a specialist visit and a few days later surgery. Wardens, grievance officers, and other non-medical prison officials are entitled to rely on the judgment of medical professionals. *See Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009) (stating that wardens are "entitled to relegate to the prison's medical staff the provision of good medical care"); *see also Estate of Miller v. Marberry*, 847 F.3d 425, 428 (7th Cir. 2017) ("[P]rison officials who reject prisoners' grievances do not become liable just because they fail to ensure adequate remedies."); *Figgs v. Dawson*, 829 F.3d 895, 903 (7th Cir. 2016) (stating that a warden's "reasonable response" to a grievance "does not demonstrate a sufficiently culpable state of mind"); *Hayes v. Snyder*, 546 F.3d 516, 527 (7th Cir. 2008) (holding that defendants were not deliberately indifferent because they "investigated [the plaintiff's] complaints and referred them to the responsible

medical providers"). These administrators were not required to do more as Plaintiff was clearly under the care of medical staff.

Plaintiff does not state a claim against Shana Clarkson, the new/interim Medical Director. Plaintiff alleges that Clarkson deemed his condition an emergency and requested he be sent to specialist surgeon. She is not alleged to have been otherwise involved in denying or delaying care to Plaintiff. These allegations do not state a plausible claim for violation of Plaintiff's constitutional rights.

Finally, as to Wexford, Plaintiff merely alleges that Wexford had a one-visit one-issue policy which prevented him from receiving dark glasses on a specific day. Otherwise, Plaintiff alleges individual failures by Dr. Trusewych, but does not plausibly connect Dr. Trusewych's misconduct to any Wexford policy. These allegations are too sparse to state a claim.

**IT IS THEREFORE ORDERED:**

1. **Plaintiff's Motion to Request Counsel [5] is DENIED. Plaintiff has not made a reasonable attempt to find an attorney on his own nor shown he has been prevented from doing so. He attaches a single note sent to a single attorney requesting help "lawsuits." He includes no facts regarding what legal issue he wants help with. Plaintiff must demonstrate that he has specifically made an attempt to find a lawyer, regarding this specific legal issue. Normally this is done by writing to several attorneys who practice in this area of law, describing his legal issue, and asking for representation in this lawsuit.**

2. **Upon merit review of the Complaint under 28 U.S.C. § 1915A, the Court finds Plaintiff states Eighth Amendment claims against Kathy Ashcraft and Zorian Truswych for their care after January 28, 2023. Plaintiff does not state a claim against Defendants Greene, Wexford, Bonnett, or Clarkson, who are to be terminated as a Defendant. Any other claims and Defendants shall not be included in the case, except at the Court's discretion on motion by a party for good cause shown or pursuant to Federal Rule of Civil Procedure 15.**

3. This case is now in the process of service. Plaintiff is advised to wait until counsel has appeared for Defendant(s) before filing any motions, to give notice to said Defendant and an opportunity to respond to any motions. Motions filed before counsel has filed an appearance on behalf of Defendant will be denied as premature. Plaintiff need not submit any evidence to the Court now, unless otherwise directed by the Court.

4. The Court will attempt service on Defendant by mailing Defendant a waiver of service. Defendant has 60 days from the date the waiver is sent to file an answer. If Defendant has not answered or appeared through counsel within 90 days of the entry of this order, Plaintiff may file a motion requesting the status of service. After Defendant has been served, the Court will enter an order setting discovery and dispositive motion deadlines.

5. For a named Defendant who no longer works at the address provided by Plaintiff, the entity for whom that Defendant worked while at that address will provide to the clerk said Defendant's current work address, or, if not known, said Defendant's forwarding address. This information will be used only for effectuating service. Documentation of forwarding addresses shall be retained only by the Clerk and shall not be maintained in the public docket nor disclosed by the Clerk.

6. This district uses electronic filing, so, after defense counsel has filed an appearance, defense counsel will automatically receive electronic notice of any motion or other paper filed by Plaintiff. Plaintiff need not mail copies of motions and other papers to defense counsel that Plaintiff has filed with the Clerk. But this does not apply to discovery requests and responses. Discovery requests and responses are not filed with the clerk. Plaintiff must mail discovery requests and responses directly to defense counsel. Discovery requests or responses sent to the Clerk will be returned unfiled unless they are attached to and the subject of a motion to compel. Discovery does not begin until defense counsel has filed an appearance and the Court has entered a scheduling order, which will explain the discovery process in more detail.

7. Defense counsel is hereby granted leave to depose Plaintiff and shall arrange the time for the deposition.

8. Plaintiff shall immediately notify the Court, in writing, of any change in mailing address and telephone number. Plaintiff's failure to notify the Court of a change in mailing address or phone number will result in dismissal of this lawsuit, with prejudice.

9. **If a Defendant fails to sign and return a waiver of service to the clerk within 30 days after the waiver is sent, the Court will take appropriate steps to effect formal service through the U.S. Marshals service on that Defendant and will require said Defendant to pay the full costs of formal service pursuant to Federal Rule of Civil Procedure 4(d)(2).**

10. **The Clerk is directed to enter the standard qualified protective order under the Health Insurance Portability and Accountability Act.**

Entered this 8th day of September, 2025.

*s/Michael M. Mihm*
MICHAEL M. MIHM
UNITED STATES DISTRICT JUDGE
